I call the next case Delaware & Hudson Railway Company doing business as Canadian Pacific Railway v. Knoedler Manufacturers, Inc, et al. And Mr. Longworth. May it please the court, my name is Gregory Longworth from the law firm Clark Hill, PLC. I represent the three plaintiffs' appellants in this case, which I'll collectively refer to as Canadian Pacific. I wish to reserve four minutes for rebuttal. That request will be granted. This case presents a real-world problem for Canadian Pacific and railroads generally. Canadian Pacific in this case paid $2.7 million in damages under the Federal Employer's Liability Act, or FELA, and it needs to recoup those amounts. It wants to recoup those amounts from the real wrongdoers, Knoedler and Durham. Under the Ayers case, the Supreme Court has held that, in fact, when a railroad pays out FELA damages, indemnity and contribution are appropriate remedies for it to recover from the real wrongdoer, and that's precisely what Canadian Pacific seeks to do here. And you're concerned that you have no remedy, if we affirm? We do have no remedy, if you affirm. Congress has been aware of that for 90 years, has it not? Congress, well, no, I would disagree. Why not? How not? Well, we do have a remedy. Well... There is no federal remedy. The Locomotive Inspection Act, or LIA or VI, I may refer to it as, does not include a federal remedy. The Seventh Circuit's Wygod case, decided a couple years ago, says that when there's no federal remedy set forth in the federal statute, what that tells you is that there's no federal remedy. It doesn't say anything about whether there's a state remedy, and that's precisely what we're trying to do here. Well, does there have to be a remedy in the law always? Your opponents cite a case that says, hey, your remedy's in the market. That's where you belong. You take this to the market, and that's how you resolve this. Not everything gets a legal response. Right. The market's clearly not an effective remedy here. Locomotive seats were purchased. They were in all of Canadian Pacific's locomotives, and that was the case for several years before they started to fail. So there clearly is not a marketplace remedy here, but there is a... Well, hold on just a moment when you say there's clearly not a marketplace remedy. The employees have been made whole, and so the damages to them are taken care of. The question is who's to bear the loss, whether it's the allegedly negligent manufacturers or your clients. And at least one court in similar circumstances, not precisely the same, but similar circumstances, seems to say, well, the marketplace can handle that because locomotion, you know, railroads will stop buying from people like Knoedler and Durham if they're selling lousy products. That's the way you get to them. What is wrong with that analysis? Well, two things are wrong. Number one, the time lag just doesn't make sense. And in this case, Durham's out of business, so there's no... So did the marketplace work? I don't know. I don't know what put Durham out of business. Durham was a small operation, but the more important... Knoedler's still in business? I believe it is, yes. Okay. The more important answer to your question is that there is a federal... there is a cause of action here. Ayers says that contribution and indemnity should exist when FILA damages have been paid out to employees. That's what we're trying to pursue. The remedy here is a state remedy... Is there any language in the LIA that you can point to that tells us that Congress intended this sort of indemnification or contribution action? No, there's not. But there's no language in it that says there is no remedy. Right, right. And there's not a case right on point. I think maybe even your adversaries would agree there's nothing dispositive here. You, I think, rightly point out that Kearns doesn't answer your question because Kearns, in 2012, the Supreme Court said that the field is preempted and you can't have a state law remedy. And as I understand your argument, you're saying that we're just trying to enforce federal law and we're being consistent with the LIA. Is that your argument? No, I want to correct one thing that you said. What Kearns said is that there's no state law remedy that puts forward a state standard of care. Very significant difference because what we're trying to do is a state law remedy that's putting forward a federal standard of care. And if you listen to the language of Kearns, the holding says, quote, we therefore conclude that the state common law duties and standards of care directed to the subject of locomotive equipment are preempted by the LIA. Because that's what was at issue in that case. Your argument wasn't at issue there. So that's why Kearns isn't fatal to your claim, correct? That's correct. But why should we, I think you have to concede, correct me if you don't, that Napier and Kearns are a stream heading in one direction and you're swimming upstream and you're trying to get us to say that we shouldn't take the next step with Kearns and we should reverse course. Why should we do that? Right. We agree with Kearns. Kearns is correct. If our claim was a state law claim that pursued or tried to assert a state standard of care, we're done. We're preempted. Kearns answers the question. But we're not. We are asserting a state remedy for a federal claim. We've covered that, but I don't think you've addressed my question with respect. I'm asking you, we have a field preemption situation here, correct? Yes. For reasons I don't quite understand, you're relying on all kinds of cases like Silkwood and Medtronic and all these other cases that aren't even field preemption cases, which seems to suggest you have a real problem because as you know, in the field preemption cases, it's pretty hard to get out from under that and contrary to the express preemption cases on which you rely, there's a presumption against preemption, right? Yes. So in the field preemption arena, why should we not just take the next step beyond Kearns? I agree with you that Kearns isn't fatal to your claim, but I think you need to give us some compelling reason why we should reverse course rather than just continuing on to the next step in light of the fact that this is a field preemption case. Well, some of the cases are field preemption cases. When we deal with Easterwood, for example, that's dealing with the Federal Railroad Safety Act, the FRSA. Does that help you? I mean, in your reply brief, you say that in 2007, Congress clarified the Federal Railroad Safety Act to provide expressly what Congress had always intended. Federal preemption does not apply when the plaintiff alleges and proves a violation of a federal standard of care in the federal regulations. And I read that and I thought, how does that help you? Because that shows when Congress wants to, it can say specifically and has in the Federal Railroad Safety Act, by the way, this doesn't prevent a state law claim based on a federal standard of care. But there's nothing like that in the LIA, is there? There is an FRSA, but there isn't an LIA, right? The LIA is silent on a state law claim. So the fact that the FRSA isn't silent, how does that help your point that you should go ahead and say you can do under the LIA what you can do under the FRSA? The other acts that we're relying on, Silkwood cases, Silkwood, Regal, Medtronic, all those cases, you don't have an act that says a state claim that asserts the federal violation is valid. They don't say that, but they recognize the principle, and that's the controlling principle that flows from those cases is that a state claim can be asserted to assert a federal violation unless Congress has said you can't do that. That's absolutely right in cases involving express preemption. And precisely wrong, it seems to me, with cases involving field preemption. What am I missing here? I don't think that that is the case. I think even in field preemption, there's no reason that just because the entire field is preempted does not mean that a state claim, it's preempted from having a state duty or state standard of care. Well, are the Safety Appliance Acts your best platform to be making the pitch you're making now? I think that the overall, what you see from the whole line of cases, cases that are dealing with atomic energy, cases dealing with medical devices, cases dealing with the Safety Appliances Act, the Federal Railroad Safety Act, all those acts taken together are all saying the same thing. And that is, unless Congress has cut out a state claim that enforces the federal right, you should be allowed to do that. And the Seventh Circuit's Wygott opinion is very clear in analyzing this issue. It's saying that only— And what was Wygott applying? In what context? Wygott was applying HAMP, the Help for Mortgage Providers. And is that a field preemption or an express preemption circumstance? I believe that the case—I believe that they found that there was field preemption. You find field preemption even though—I don't think that the distinction between field and express is necessarily a valid distinction. Do you think the standards are the same in field and express preemption? I think it can be. An express preemption could have the effect of field preemption and, in fact, often will preempt the entire field. Well, you at least gave the example of— But this was clearly field preemption. Of course, it may appear that this is field preemption. So the fact that express preemption may occupy the field doesn't answer Judge Hardiman's question. It does to a degree because the cases are, again, showing that the flow, the principle, stands for the proposition that a state claim can be used to enforce a federal violation. And that principle flows through all of the cases, some of which are field preemption cases. Now, in Silkwood, Silkwood dealt with the Atomic Energy Act. It did. Correct? Yes. Now, didn't the Atomic Energy Act preempt the field? I think it did. Okay. So is there any difference then between the analysis in Silkwood and the analysis you're trying to make? No. In Silkwood, the court said that a state remedy, in that case punitive damages, could be pursued to enforce a violation of the federal act. Not state standards, but federal standards. Okay. All right, Mr. Longworth, we'll have you back on. Thank you. And we will call Mr. Plany for Knoedler. And I assume that you'll be addressing the tort aspect of the argument, correct? Actually, Your Honor, I'll address both. Okay. It's our position that both the tort and the contract claim both are preemptive, basically for the same reasons. All right. You may proceed. Thank you. Attorney Matthew Plany, on behalf of Knoedler Manufacturing, is one of the appellees in this case. The key, Your Honor, in any preemption analysis is congressional intent. Here, it's clear that Congress intended the LIA to occupy the entire field of locomotive equipment to the exclusion of state regulation or action. Pull that microphone up a little bit, you said. Yeah, and when you say that's clear, why is it not just as good a conclusion from the silence of the LIA in light of Kearns and in light of the decisions like Crane and Tipton that the Congress does want people to have a remedy, but they just want federal standards to apply? Why isn't that just as good a conclusion? Well, we have to start with Napier. The Napier case made it clear that states cannot regulate or wade into the regulation of locomotive equipment. No question. I don't think nobody here, your opponents, not anybody up here, nobody's questioning that Napier is clear that the states can't impose their own standards and new standards in different directions. That's not the argument that's going on in this courtroom right now. The question is, is it okay for state law to provide a remedy for a violation of a federal standard? Crane and Tipton say yes in the context of the Safety Appliance Act. Engvall, a Minnesota case that you folks reject, said yes in the context of the LIA. The U.S. Supreme Court in Kearns twice cites Engvall with approval. Why isn't that enough to get them past your preemption argument? Well, the Crane and Tipton line of cases do not address the LIA. They deal with the SAJ. They do, but that doesn't seem dispositive because, as your opponent says, the coupling that was at issue in the Safety Appliance Act in those cases was something as to which nobody contested there was a, quote, full preemption, unquote. Other than saying, well, that was Safety Act and this is Locomotive Inspection Act, what makes the reasoning in Crane and Tipton not applicable? Crane differentiated, if you will, between a claim brought by a railroad employee versus a non-railroad employee. That if you're dealing with a railroad employee that's injured, the only remedy that they have is a FELA claim, either under the LIA or the SAA, both of which are amendments to and facilitate the FELA claim. If a non-employee, non-railroad employee is injured, then and only then from the Crane and Tipton cases the way I read them, could you have the possibility of a state claim based on the SAA standards? Sure, and the railroad says, whatever else we are, we're not employees, and when they say we stand in the shoes of the employee, that's a neat rhetorical trick, but the fact remains we're not the employees. They have their right under FELA, and this state remedy is for everybody who doesn't have that FELA right. We don't have it. We should get it just like the companies in Crane and Tipton did. In that argument, well, it all goes back to the way that the statute is drafted, the intent of the statute, and the fact that the Canadian Pacific claims in this case are not, in fact, non-railroad employee claims. They want to make them out to be the contribution and identification claims in the cases that have addressed this argument, the Crane and Tipton case that we've cited, Stevenson, Motiv, and there's others. I think there's about four cases that have actually addressed this specific argument that they're making under any law, have said those do not apply because they're dealing with either non-railroad employees, and Stevenson and Motiv dealt with identical facts, identical claims of the railroad paying the FELA claims, then trying to cover that money from third-party manufacturers and said you can't do that under the FELA, under the statute, under the federal law because the employee himself can't cover. But Engvall said you could, and the Supreme Court seemed to like Engvall. Well, the Supreme Court referenced Engvall in two footnotes. I don't think that that's an endorsement. That was, errors came out in 2001, I believe, shortly after the Engvall case came out. I don't think simply referencing it in a footnote is an endorsement. It's recognizing that it's there. In the first footnote, it was a general footnote with approximately 20 or 30 other cases, none of which apply to the specific facts in this case. I apologize. I said, Kearns, I meant Ayers. Thank you for making that point. But it said what it said, right? It cited it with approval. Presumably, if the Supreme Court thought Engvall was wrongly decided, it wouldn't have cited it once, let alone twice. Well, I think since Ayers, you've had cases that have come out that have directly addressed it. The Supreme Court has not directly addressed the issue that's presented in this case by the committee specifically. But we have three district courts to have. We have one state court, two state courts, four of which have all taken the position, Your Honor, that these railroads, or at least two of them have said that the railroads themselves cannot bring these claims because the statute does not allow it. Weren't those all state law claims? Weren't those cases, every single one of them except Roth, cases in which the issue was a state law standard being applied, not a state law claim applying a federal standard? In each of the cases, there's the Moth case, the Stevenson case, as well as the Bonner case out of Idaho, another district court case. Each of those cases were brought as state claims based on violations of the LIA standards. They were all brought under that umbrella. Really? So when your opponent says Roth is the only thing they got going for them, he's just mistaken? And he said that specifically in his reply brief. In the reply brief, they said, in fact, I think they said there's no case that has held that they can't do what they're asking. And using their own words, which they used, that's baffling. I don't know how they did not see that. Judge McLaughlin, the district court, set out both Stevenson and Motive, one of the two cases that we were primarily relying on, and in detail. Gotcha. On contract, why shouldn't you be held to have accepted your own voluntarily taken on duties? Well, again, I think you have to, the contract itself, we've cited some case law, the district court agreed, has cited some other case law, that a breach of contract, even if it's a voluntary duty or something along those lines which they're arguing, that that too would fall under the preemption breach or the breadth, if you will, of the LIA. You can't, it seems common sense that if the statute says you can't sue as a tort for a violation of the LIA under state common law, But why should you not be able to sue under an express warranty? That's what they're alleging here, that there was an express warranty. They'll fix the seats, Durham will fix the seats. The second contract? Right. That... It's a contract. It's a contract, but again, based on the LIA analysis, if the claim involves, as the district court found, if the claim itself is directed at locomotive equipment, even under a contract that's agreed to, it's preempted under federal law. It just can't be done in... And that's your argument, tough luck, it's unfair, they have no remedy, but tough luck. That's the rules of the game that Congress has established in what everyone knows is a heavily regulated field. If there was a nicer way to put it, I would, Your Honor, but there isn't. So you can make contractual promises and break them with impunity, is what you're coming down to, right? We can promise you the world, and tough for you, because the LIA doesn't say you can sue me. I guess. All right, we'll have your co-counsel. Mr. McCool? Good morning, Your Honor. Judge Jordan, Judge Fischer, Judge Harden. George McCool from Wright and O'Donnell on behalf of Durham Industrial Sales. I'd like to first, Judge Jordan's last question, talk about that. The people who are being put upon by this lack of remedy are not your average consumers. There are railroads, in this case a huge railroad, with incredible economic power to buy or not buy from various people as a result of their… Aren't the rich and powerful entitled to the rule of law, too? They are if Congress allows them to. Okay. And Congress in this case has specifically not permitted a private cause of action. Wait a minute, when you say specifically not provided, isn't it really fair to say it has not expressly provided it? We're here arguing whether it might not be implied, but they certainly haven't said you can't do it, have they? Well, the case law that's interpreted has said that, Your Honor. Not this type of claim. Kearns doesn't control, it's not directly on point. Except, Your Honor, you can't lose track of the fact that this case comes out of – I'm using the term derivative, but that's not correct – but the claims of the employees. And there is at least four cases that have been cited back and forth by both parties where it says employees' claims. The railroads can't do what the employees couldn't do. And in this case, that's basically what they're doing. They're pursuing, after the fact, the employees' claims that they had to pay because of FELA. There's nothing that says that. Your argument is based on the preemption of the field. It is, Your Honor. However, Stevenson and Motive and those cases all say, specifically in the language of the case, that the railroad can't pursue what the employees couldn't pursue. The employees can't pursue this claim pursuant to the LIA. Well, what do we make of this language from Ayers? Ayers says that the federal and state reports contain numerous FELA decisions, ellipse, recognizing that FELA defendants may bring indemnification and contribution actions against third parties under otherwise applicable state or federal law. Footnote, Engvall. Ayers is a different case, Your Honor. If you look at the facts of that case, who was being chased in that case by the railroad were the prior employers and the subsequent employers of the plaintiff who also exposed Mr. Ayers to asbestos and saying that these people are not railroad defendants. They are some other manufacturer, some other employer. And in order to properly allocate the fault for Mr. Ayers, we have to look to what happened to the prior employers and the subsequent employers. What's the policy rationale that would lead us to say that the congressional intent is that everybody in the world except the railroads who have to pay the FELA damages is entitled to collect on a contribution or indemnification claim against somebody who injures the employee? Because there's no question that it's the seats that your client failed to fix and that neither people made false. No, let me say on this appeal, that's not the point in contention, right? Sure. It's not contested for purposes of this appeal, okay? The fault lies with the defendants. The question is, can the railroad get to them? So what is it in any case or in any statute that leads one to the belief that Congress meant for a third party's wrongful actions and damages to fall on the railroad exclusively while everybody else could have a contribution or indemnification claim? Your Honor, when the LIA was enacted, the reason it was enacted is because the railroads didn't want 50 or however many states there were at that point regulating how their equipment had to be. They wanted the federal government to come in and say, one standard... Sure, and they're not suggesting anything to the contrary. They're saying, yeah, we agree. It ought to be the standard set forth in regulations passed under the LIA. So everybody's on the same page there. And turn around and also say, in exchange for that, you're responsible. The LIA specifically says, if there's a problem with the railroad locomotive, any part of it, railroad, it's on you. It specifically says that. In fact, it doesn't say anything about us. It seems to me that when the LIA was enacted in 1911, the Supreme Court had not said that consideration of preemption of a state statute and preemption of state common law were the same. The Supreme Court had not articulated that. In fact, they articulated it the first time in San Diego Building Trades v. Garmin in 1959. So you're asking us to say that in 1911, Congress understood what they were doing, that there would be no common law claims based on federal standards that would be allowed to proceed in state courts. That's what you're asking us to say. Yes, sir. Well, I guess that's what I'm asking you to say, at least in this case, because the field is preemptive. It says it's preemptive. The law case specifically lays out pretty much what I think both Judge Hartman and Judge Rudin have said. The market is your remedy, railroads. If you want to be able to not get sued and protect your employees, it's on you to do so. Wouldn't Congress have been pretty explicit about that if the real purpose of the legislation had been to say, no matter how egregious third-party behavior is, you'll eat the cost of that railroad. Your remedy is in the market. Isn't that enough of a departure from what we think of as ordinary rules of law associated with contribution and identification, that they might have said something about it if they'd meant that to happen? Judge, they didn't say that it couldn't happen, and they specifically said that there are no private causes of action under the LIA. So I think that they did say that. Do you agree with the opposing counsel that the standards are the same for express preemption cases and field preemption cases? No, I think field preemption is broader. It makes it much, much more difficult to use your honors analogy of the stream. The stream has a faster current. It makes it much more difficult. Let me turn the stream question on you. I asked the opposing counsel why they should swim up the stream. Why should we go down to the next lock? I mean, we're flying blind here, aren't we, Kearns? Kearns doesn't answer the question presented here, and why should we take the next step? Your Honor, I think you should take the next step because no matter how you slice it, whether you call it contract, whether you call it whatever, you're basically doing an end around of what Congress's intent was to protect the uniformity of the regulation. How does it hurt the uniformity? Because, Your Honor, we're now going to be dealing with, particularly with regard to contract, we're now going to be dealing with 50 different states' law with regards to what deals with the contract, what's permitted in a contract, what's not permitted in a contract. We're going to have 50 different standards, or at least slightly different enough. That's the risk you run in entering into a contract. I'm sorry? I don't, but again, Your Honor, if they can do that in one state or another, it doesn't really, you're now going to have different interpretations of that based upon each state's contract law. I just want to make a quick point that we didn't waive our jurisdictional argument as I started in my brief because that was not ruled upon by Judge McLaughlin based upon his rule on the preemption. Thank you. Thank you, Mr. McCool. Mr. Longworth? Can I ask you to start with uniformity? Because I have a concern about that, Mr. Longworth. Let's assume for a minute that, say, Vermont passes a state statute that says that any company with revenues over $100 million, there will be a presumption of unfair bargaining power. Why aren't they correct that if we rule your way that there's going to be various results in the 50 states? Right. There won't be because it will be the same standard that's applied. The railroads would hate a situation where there was not uniformity. We need uniformity because we don't want to have to switch out locomotives when we cross the state line. But didn't I just give you a hypothetical under which if you sued in Vermont state court, the result would be quite different than if you sued in New Hampshire state court, just based on the differentiation of the state law? No, it would not be state law, and that's the critical point. The LIA standard would be applied even under a state claim, a state remedy. No, but if it's in a Vermont state court, under my hypothetical, then the party with the lesser bargaining power is likely to prevail. And if it's in New Hampshire state court, it's the reverse, is it not? I guess I'm not sure I understand your situation, your hypothetical, but the standard that we use. It's not a diversity case. I mean, you would agree that many of these cases, if we rule your way, they'll be brought in state court, and the state will have to apply the contract law of the state, and that contract law could vary widely from state to state, depending upon how the state's Supreme Court's law evolves or the state statutory law evolves. Okay, and I now understand you're talking about a contract claim. Right. Okay, I was not picking that up. No, I think that the contract law, well, you get the situation in the Supreme Court's recent case, the Northwest v. Ginsburg case, where the Supreme Court in fact looked to Minnesota law in determining whether a contract claim, in that case good faith and fair dealing implied covenant, would transfer over into, or whether it would be preempted under the Federal Aviation Act, and the court said that there will be differences in state law, but as long as a party can... And the Federal Aviation Act preempted the field? I believe it did. In fact, if I can, well, yes, and I'll continue with that. Yes, I think it does. In fact, the Supreme Court said that as long as you can contract out of, as long as you can disclaim an implied covenant or an implied warranty, then you are agreeing to be bound by it when you enter into a contract. And so we think that on the express agreement or the agreement to comply with the LIA, we think that there clearly is a contract claim here. We also think that there's an implied warranty under the UCC or common law that applies here because they could have disclaimed that under Pennsylvania law. I do want to address the preemption issue. Under the FAA case, this court's Abdullah opinion, let me read from that. It says, We hold that federal law establishes the applicable standard of care in the field of air safety generally, thus preempting the entire field from state and territorial regulation. That's the FAA. The Safety Appliances Act, the Railroad Act, I'm reading from Southern Railway Company, 1914 Supreme Court. They say, Congress has so far occupied the field of legislation relating to the equipment of freight cars with safety appliances as to supersede existing and prevent further legislation of that subject. I think that's field preemption. And in the Silkwood case, which, again, is Atomic Energy Act, the court says, We concluded, and it's actually citing back to a prior decision, but it says, We concluded that the federal government has occupied the entire field of nuclear safety concerns except the limited powers expressly ceded to the states. In other words, simply because you have expressed preemption provisions does not mean you're not precluding the entire field or preempting the entire field. That may well be the case. That is what happens. In fact, an expressed preemption could be broader than a field preemption in theory. It could actually say there will be no state remedies for a violation of the federal act, in which case it would be even broader than field preemption. My point being that the claim is not, we can't look simply to the fact that this is a field preemption in determining the outcome. If you have further questions, I'd be glad to entertain them. Mr. Longworth, we thank you, and we thank all counsel for your argument. And we'll take this case.